UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11082-GAO

LEHMAN BROTHERS HOLDINGS, INC.,
Plaintiff,

v.

1ST NEW ENGLAND MORTGAGE CORPORATION dba ABERDEEN MORTGAGE and FNE MORTGAGE,
Defendant.

ORDER
September 25, 2014

O'TOOLE, D.J.

## I. Background

In an Order issued on September 12, 2012, the Court granted Lehman Brothers Holdings, Inc.'s motion for summary judgment as to liability. The parties have submitted cross-motions for summary judgment as to damages, including attorney fees and costs. Lehman seeks damages in the amount of $685,249.29, plus post-judgment interest, in damages, $216,036.60 in attorneys' fees, and $43,089.58 in costs. In opposition, 1st New England Mortgage Corporation argues that Lehman's motion should be denied because a fact issue remains as to mitigation of damages. 1st New England asserts that Lehman failed to mitigate its damages by not acting promptly to demand repurchase of the Bloat loans but instead waiting until the value of the underlying property had plummeted. Alternatively, 1st New England moves for summary judgment in its favor, contending that Lehman has not sufficiently established that it has incurred any damages at all because it has not presented evidence that it repurchased the Bloat loans from Structured Asset Securities Corporation ("SASCO").

**II.     Discussion**

   A.     Motions to Strike

Both parties have filed motions to strike. I will resolve only those that must be resolved prior to a ruling on the cross-motions for summary judgment.

1st New England's Motion (dkt. no. 112) to Strike the Supplemental Declaration of John Baker is DENIED. Under the circumstances, the declaration was timely filed.

1st New England's Motion (dkt. no. 114) to Strike the Supplemental Declaration of Robert T. Mowrey is DENIED. This declaration was also timely filed, considering the attendant circumstances, and 1st New England has not shown any material prejudice.

   B.     Repurchase of Loans

1st New England contends that summary judgment should enter in its favor because Lehman has failed to establish that it repurchased the Bloat loans from SASCO. Notably, 1st New England does not point to any contrary evidence but simply asserts that the record, either with or without Lehman's Vice President John Baker's supplemental declaration, does not establish the fact of repurchase.

I find that there is no genuine dispute that Lehman in fact repurchased the loans. Baker testified to the same at his deposition (Cabrera Decl., Ex. 1 at 5-8 (dkt. no. 107-1)), and his supplemental declaration and accompanying exhibits satisfactorily document the transfers underlying the repurchase.

1st New England's Cross-Motion for Summary Judgment (dkt. no. 93) is therefore DENIED.

C.  Mitigation

1st New England argues that Lehman should have mitigated damages by (1) diligently asserting its repurchase rights instead of lying in wait until the real estate market crashed, and (2) challenging SASCO's repurchase demand. As to both arguments, Lehman is correct that a general mitigation defense is inapplicable to a case like this involving a repurchase clause, which specifically shifts risk to the seller. See Resolution Trust Corp. v. Key Fin. Servs., Inc., 280 F.3d 12, 18 & n.14 (1st Cir. 2002) (holding that the risk of market fluctuation should be borne by the seller); Wells Fargo Bank, N.A. v. LaSalle Bank Nat. Ass'n, 2011 WL 3739170, at *6 (W.D. Okla. Aug. 23, 2011). What is more, 1st New England claims that Lehman should have refused to repurchase the Bloat loans from SASCO on the ground that the misrepresentations were not material – an argument that was rejected by this Court on summary judgment.

After a careful review of the briefing on this issue, I conclude that 1st New England has failed to demonstrate that a genuine issue of material fact exists as to mitigation so as to preclude entry of summary judgment.

D.  Date of Breach

Lehman claims that Aurora Loan Services (a Lehman Brothers Company) notified 1st New England by a letter dated June 6, 2007 that the Bloats had misrepresented their income and demanded repurchase within 30 days. (Black Decl., Ex 1 at 8-9 (dkt. no. 34-1).) The letter stated, "Because the loan did not meet Lehman's purchase requirements, we ask that you fulfill your obligations pursuant to the Agreement and Seller's Guide and repurchase the loan within 30 days of the date of this letter." (Id. at 8.) However, 1st New England points out that the letter went on to say that there may be "alternatives to repurchase" and that 1st New England should contact Aurora within five days to discuss "the mechanics of repurchase, including our calculation of the

repurchase price or to discuss the availability of any of the alternatives discussed above." (Id. at 8-9.) 1st New England responded by letter dated June 18, 2007, asking for more detailed information as to the Bloats' income and expressing a willingness to "work together" to resolve the issue. (Id. at 14.) On July 20, 2007, Aurora sent this email to 1st New England:

> Hi Brad and thank you for your response, which I am currently reviewing. I will contact you next week to discuss my findings. Thanks again.

(Id. at 16.) It is undisputed that Lehman had no further communications with 1st New England regarding either of the Bloat loans until the filing of this action on June 24, 2009.

1st New England argues that July 6, 2007 cannot be the date of breach because: (1) the June 6, 2007 letter was not a repurchase demand, as it contemplated further discussion about alternatives to repurchase, and (2) the letter referenced only the first Bloat loan (#8820). As Lehman points out, this is another attempt by 1st New England to revive an argument made and rejected at the liability stage. (See Def.'s Mem. in Opp'n to Mot. for Summ. J. at 6-9 (dkt. no. 30).) Further, Section 710 of the Seller's Guide does not require that a "repurchase demand" be made for a repurchase obligation to arise. Under Section 710, even if Lehman had not demanded repurchase of the loans until 2009, 1st New England was required to repurchase the loans "no later than thirty (30) days after the **earlier** of the date on which Purchaser notifies Seller of such breach **or** the date on which Seller knows of such breach." (Seller's Guide, Ex. 1 § 710 (dkt. no. 23) (emphasis added).) 1st New England knew of the breach when it received the letter from Aurora dated June 6, 2007, and though the letter did not list the second Bloat loan (#9018), it was on notice of the misrepresentation affecting both loans.

Therefore, there is no genuine dispute that July 6, 2007 is the date of breach, and it is appropriate to calculate pre-judgment interest from that date.

4

E. Attorney Fees and Costs

Lehman originally requested $218,148.81 in attorney's fees and $43,489.58 in costs. It then filed a "Notice of Reduction in Attorney Fees and Costs" (dkt. no. 131), reducing the amount sought for a particular invoice by $2,112.21 in fees and $400 in costs. After the reduction, Lehman seeks $216,036.60[1] in fees and $43,089.58 in costs.

1st New England's objections to these fees and costs are contained only in the cross-motion for summary judgment. 1st New England contends that: (1) the billing records submitted with Attorney Mowrey's declaration are too heavily redacted such that neither 1st New England nor the Court can determine the reasonableness of the fees; (2) Lehman failed to provide the credentials of two attorneys and five paralegals; (3) the fees must be excessive and duplicative, as seven attorneys and six paralegals billed 801 hours on this case; and (4) the fees should be reduced as the compensatory damages are reduced.

In response, Attorney Mowrey submitted a supplementary declaration, to which he attached the billing records in unredacted form as a sealed exhibit (dkt. no. 133). As of the time of the hearing on July 23, 2014, 1st New England had not yet received the unredacted invoices, but counsel for Lehman offered to provide them. If Lehman has not provided the unredacted invoices to 1st New England, it is ordered to do so within two days of the entry of this Order. 1st New England must file specific challenges, if any, to the fees and costs on or before October 10, 2014. If specific objections are made, the Court will schedule a hearing to determine the matter.

---

[1] The Notice miscalculates the difference between $218,148.81 and $2,112.21 as $216,036.59.

**III.     Conclusion**

For the reasons stated herein, 1st New England's Motion (dkt. no. 112) to Strike the Supplemental Declaration of John Baker, Motion (dkt. no. 114) to Strike the Supplemental Declaration of Robert T. Mowrey, and Cross-Motion (dkt. no. 93) for Summary Judgment are DENIED, and Lehman's Motion (dkt. no. 84) for Summary Judgment on Damages is GRANTED. Unless 1st New England files particularized objections to attorney fees and costs by October 10, 2014 and the Court finds that at least some fees or costs are unreasonable, judgment shall enter for the plaintiff in the following amount: **$685,249.29**, plus post-judgment interest, in damages, **$216,036.60** in attorneys' fees, and **$43,089.58** in costs.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge